ON REHEARING
IzGONZALES, Judge.
We grant rehearing in this case for the limited purpose of addressing the issues raised by the plaintiffs in their application for rehearing. Our reversal of the trial court judgment in our original opinion remains the same.
*24 The plaintiffs argue that this court failed to apply the standards set forth in Stobart v. State, through Department of Transportation and Development, 617 So.2d 880 (La.1993), in reversing factual findings of the lower court. We did not apply the Stobart standard to this case because we found legal errors which so interdicted the fact findings of the lower court that we conducted a de novo review, in accord with Ragas v. Argonaut Southwest Ins. Co., 388 So.2d 707, 708 (La.1980). Those legal errors are set forth in our original opinion and need not be fully repeated herein.
A short history of Louisiana Highway 628 [2] is helpful for an understanding of this ease. From the testimony, the maps, the Exhibits and other documents in the record, it can be determined that a road existed along the eastern banks of the Mississippi River between Baton Rouge and New Orleans for quite some time. This was one of the earliest roads in Louisiana, and apparently at one time was named “Route 1.” (A legal servitude along the banks of navigable rivers has been part of our civil law for centuries. See La.C.C. arts. 665 and 666.) Some maps denote this road as old Highway 61, although the date of its designation as U.S. Highway 61 does not appear in the record. At some point in time a decision was made to construct the Bonnet Carré Spillway (a project carried out by the United States Corps of Engineers) on land apparently ceded to the United States for the purpose of relieving flood pressure from the Mississippi River on the City of New Orleans. The configuration of the floodway, with the Mississippi River on one end and Lake Pontchartrain on the other, necessitated the destruction of a portion of old Route 1. It also meant that the two sections of the old river road would dead-end into the levees of the new spillway. Apparently, it was because of the dead-ending that the Louisiana Highway Commission requested permission from the United States to build a new section of road | awhich would run from the Mississippi River to intersect with a new highway soon to be constructed. Thus, Highway 628, as it came to be known, consisted basically of two sections. The old section runs from the town of LaPlace along the side of the Mississippi River to the town of Montz and thence to the levee at the Bonnet Carré Spillway. The new section runs north from the river and connects into U.S. Highway 61. This latter section is only new in relative terms because apparently it was constructed sometime around 1933, on or about the same time both the spillway and the elevated section of new U.S. Highway 61 traversing the spillway were constructed. We will refer to the older portion of Highway 628 along the Mississippi River as the Gypsy Levee section and refer to the newer portion as the Bonnet Carré Spillway section.
THE GYPSY LEVEE SECTION
One of the legal errors made by the trial court in this case was its reliance upon documents which did not pertain the correct section of Highway 628. One of these documents relied upon by the trial court is a contract contained in Exhibit 40. A full analysis of Exhibit 40 [3] is important to an understanding of this case. The first six pages of Exhibit 40 which plaintiff counsel referred to as “records pertaining to Highway 62802” are two copies of a standard contract between the Louisiana Highway Commission (represented by W.T. Peterman, Chairman), the Pontchartrain Levee District Board (represented by Hunter C. Leake), and Robinson Construction Company. It was agreed at trial that the correct date for the contract is August 16, 1923. The contract states that it is for repair work on the Gypsy Levee Section of the Baton Rouge-New Orleans Highway La. Route 1 (Project # 317). The contract additionally sets out the amounts to be *25 paid and the compilation dates. The parties, dates, amounts, and other variable information are filled into the blanks in longhand on the first copy of the contract and typed into the blanks on the second copy in Exhibit 40. The exact nature of the work is either not written into the contract or is in those portions which are illegible. The width of the right-of-way of the highway is not an issue in the contract, but in part of the boilerplate language the following is found:
|4It is further understood and agreed that the center line of said highway is as shown on plan and that the right-of-way extends thirty (30) feet each side of the center line. If the right-of-way should be insufficient for the grading and for the side slopes in cuts or fills the Board of the Pontchartrain Levee District will provide any extra right-of-way necessary for the grading slopes and barrow pits, etc.
This quoted language refers to a plan, but no plan is attached to the contract in Exhibit 40. The United States is not a party to this document (note that the Bonnet Carré project did not come into being until 10 years later.) The request by the State to the United States government for permission to construct the road at issue in this ease (later designated Highway 628) was not made until 1933.
THE BONNET CARRÉ SPILLWAY SECTION
As pointed out in our original opinion, the plans attached to the 1933 request (upon which the approval was based) show a proposed road of 30 feet for the project.[4] Logically the section of road running from the Mississippi River generally north to U.S. Highway 61 was built sometime between 1923 and 1964 but, remarkably, no records of construction or repair for this significant period are found in the record.
The plaintiffs claim on rehearing that the defendant did not object to the introduction of Exhibit 40. The record shows in pertinent part as follows:
MR ANDERSON: At this time, Mr. Kemp, if you want to — I would like to offer, introduce and file into the record those records that you made available to me through the request for production and Mr. Clary has relied upon, if you would want to put those in by way of joint Exhibits at this time. I would offer to do that. Your Honor, at this time I would like to offer, introduce and file into the record the highway construction records pertaining to Highway 62802[5] which is in District 2 of the D.O.T.D. running from the St. Charles-St. John parish line to the Highway 61. Mr. Kemp has agreed not to object to those records with the exception of records dealing with the Gypsy Setback in the town of Montz and the contract dealing with the railroad crossings, is that correct? (Footnote added.)
MR. KEMP: That’s correct.
Later in Mr. Clary’s testimony, he is asked to give an opinion as to the width of the right-of-way on Highway 628, to which Mr. Kemp objected as being a legal conclusion and beyond the scope of Mr. Clary’s expertise as a civil engineer. This objection was overruled Rby the court. Mr. Clary then went on to refer to the contract of August 16, 1923, as the basis of his 60 foot right-of-way claim. Later again, while on cross-examination, Mr. Clary conceded that the United States owned the property, and had only given the State permission to construct and maintain a highway. Following that testimony, Mr. Clary conceded that Exhibit 40 is the contract of 1923 and that the United States Government is not a party to that contract.
Analysis of the 1923 contract makes it clear that this contract involved the Gypsy Levee Section initially objected to by Mr. Kemp. The thrust of the initial objection is that this portion of the Exhibit (the first six pages relied on by the expert) did not involve the United States. This should have called everyone’s attention to the fact that these pages involved the old River Road ten years before the construction of the Bonnet Carré Levee section. The first six pages of Exhibit *26 40 are the ones involving the Gypsy Levee section. We consider irrelevancy to have been the proper objection to the introduction of Exhibit 40. The irrelevant portions of Exhibit 40 should have been excluded. To the contrary, the court in its reasons of judgment, found (referring to the August 16,1923 contract in Exhibit 40):
Highway 628 was built upon land acquired by the United States for the construction of the Bonnet Carré Spillway. By virtue of 38 USC 702, the Secretary of War was authorized to grant to the State rights-of-way for highway and other purposes. Joint Exhibit 41 reflects that on August 4, 1933, the State was granted the right and privilege to construct and maintain highways on the lands of the United States along the “toes” of the Bonnet Carré Spillway side levees. Again referring to joint Exhibit 31 and transcript page 33, in connection with that grant, the chief state engineer wrote to the U.S. District Engineer a. letter concerning this agreement authorizing the State to construct a road from the toe of the levy to the edge of the Corps of Engineer’s property. A contract was then [emphasis added] entered into between the State and the Pontchartrain Levy District Board and the Louisiana Highway Commission where it was agreed that Highway 628 was to extend thirty feet (30') on each side of the center-line.
The trial court obviously believed, as evidenced by its use of the word “then,” that the 1923 contract followed, rather than preceded, the grant of servitude or implied dedication contained in the McArthur letter. The trial court also erroneously believed that the 1933 owner of the land (the United States) was somehow involved in the 1923 contract. The | erefusal to exclude the 1923 contract relative to the Gypsy Levee setback was the legal error which interdicted the fact finding of the trial court.
Once it has been determined that the right-of-way for this road is 30 rather than 60 feet, the plaintiffs’ claim of negligence takes on a whole new meaning. The plaintiffs did not contend at trial, or even on appeal, that the right-of-way was anything less than 60 feet. The plaintiffs’ expert’s own drawings show that if the right-of-way is 30 feet, the trees in question belong to and are in the custody of the United States. The plaintiffs’ basic allegations and attempts of proof were aimed at showing that DOTD did not properly maintain the shoulders and allowed trees to grow in the claimed 60 foot right-of-way. The record shows that DOTD actually maintained beyond its right-of-way. The paved road width was 20 feet and mowing and clearing was done seven feet (the width of the mowers) on either side, which is two feet beyond its five foot right-of-way on either side. There is no evidence showing the trunks of trees within the 30 foot area.
If these trees had actually been in the State’s right-of-way, the State would have had an entirely different duty. The State does not need permission to cut or trim its own trees. The jurisprudence cited in the original opinion discusses the trimming of trees belonging to another.[6]
*27 The plaintiffs argue that the State can trim trees belonging to another without seeking permission of the owner if the trees pose a nuisance or an immediate hazard. However, this is incorrect. The cases on this issue cited in our original opinion, Adams v. State, Department of Highways, 357 So.2d 1239 (La.App. 2d Cir.1978) and Harkness v. Porter, 521 So.2d 832 (La.App. 2d Cir.1988), stand for the proposition that branches which intrude into the traveled portion of the roadway cannot be removed unless they are a nuisance or pose an immediate threat to the traveling public. Only tree branches which present immediate danger can be removed immediately, without seeking the owner’s permission or a court order. However, the determination of nuisance is a judicial one. Adams, 357 So.2d at 1241. In both the Adams and the Harkness cases, defendants cut trees and were condemned to pay damages for trespass because the court did not find that either nuisance or immediate peril existed. The Adams case relies upon Oglesby v. Town of Winnfield, 27 So.2d 137 (La.App. 2nd Cir.1946). In Oglesby, the court correctly enunciated the different procedures to follow when a tree is a public nuisance rather than an immediate hazard. The Oglesby court stated at 27 So.2d at 140:
Unless a nuisance does in fact exist, no one, not even the municipality in which it is located, is protected against suit for damages for voluntarily removing that which is deemed to be the nuisance. The safe rule is to have the alleged nuisance judicially declared to be a nuisance and its abatement procured through processes of government orderly exercised. It is only in cases of emergency that abatement of a nuisance may be accomplished without pri- or adjudication of a court authorizing such to be done, and even in such cases, the abatement is done at the actor’s risk and peril.
The claim of nuisance need only be addressed when dealing with property of others. It is not an issue for trees that are owned by the State. Since it has never been the plaintiffs’ contention that these trees belonged to another (the United States), the claim of nuisance makes no sense.
There is no question that DOTD owes a duty to keep the roads clear. If a tree or a branch falls into the traveled portion of the road, DOTD owes a duty to remove it and make the roadway safe for travelers. This duty begins when the State has knowledge of the hazard, regardless of who owns the tree limbs, other objects or material on the roadway.
There was no attempt to prove the State had knowledge of this particular limb dangling onto the roadway. Indeed, Mr. Thompson himself, on his way to work earlier that same day, passed under the very spot where the limb impacted his car on the way home that | gaftemoon, yet he did not see the tree limb iniruding onto the road.[7] He was in the passing lane of the road at the time of impact with the tree limb, which was the same side of the road he traveled on that morning on his way to work.
There is no general duty on the part of the State to clear the highways of overhead objects which do not present a danger to motorists. Many objects go across or above the streets and highways of our State. Power and telephone lines, traffic lights and signs, and other lighting devices hang harmlessly and benignly overhead. These objects provide safety or other useful functions. To remove all overhanging trees or objects which exist in thousands of locations would not only be prohibitively expensive but entirely unnecessary. As long as these objects are insulated from the roadway by height they pose no hazard. If trees belonging to another do not pose an immediate hazard, DOTD must request the owner’s permission or seek court authority to remove them. Since the plaintiffs have never contended that these trees belonged to another, they never attempted to prove that DOTD was negligent in failing to take seek an owner’s permission or seek court authority to remove them.
*28 Plaintiffs argue that this court erred in ignoring Exhibit 25, a highway needs summary. This document (which was objected to by the State as being irrelevant) is an inventory taken by the State for purposes of highway maintenance. It cannot, and does not, create a servitude against the United States, the owner of the property. See La.C.C. art. 642. An employee of the State cannot create a servitude, make a dedication, or change the size of a right-of-way on land owned by the United States by filling in a blank on a DOTD highway needs summary entitled “apparent right-of-way.”
Another argument made in the application for rehearing is that the evidence of nineteen run-off-the-road accidents along a control section of Highway 628 during a seven year period served as evidence that the shoulder was defective. However, there was no evidence whatsoever linking these accidents to tree limbs. Further, no comparison evidence 19whatsoever was given to show that an average of 2.5 accidents per year was an unusually high number for this type of highway.[8]
Although the trial court did not rely upon La.R.S. 48:220.1 in its reasons for judgment, Mr. Thompson continues to argue that La.R.S. 48:220.1 is somehow applicable to this case. As pointed out in our original opinion, there are several reasons why La. R.S. 48:220.1 is not applicable and why Mr. Thompson’s interpretation thereof is flawed.
First, Highway 628 was constructed in 1933 and La.R.S. 48:220.1 was not enacted until 1976. As clearly pointed out in our original opinion, the courts of this state have refused to give retroactive effect to this statute. Second, Louisiana Revised Statute 48:220.1 applies only to determine the width of the servitude only in situations where the Department of Highways takes over an existing road from a parish or municipality. A parish or municipality is not involved in the case herein.
Further, the use of property is an element of ownership. Louisiana Constitution Art. 1, § 4 provides in pertinent part:
Property shall not be taken or damaged by the state or its political subdivisions except for public purposes and with just compensation paid to the owner or into the court for his benefit.
Mr. Thompson and his expert would have us interpret La.R.S. 48:220.1 to mean that in those instances where DOTD has constructed a highway without a recorded conveyance or a dedication of any kind (that is, a compete trespass) DOTD shall have a right-of-way if the highway exists for a period of three years. That is not the meaning of this section, and such an unconstitutional interpretation is clearly not the intent of this legislation. No_[hjurisprudential support has been advanced by the parties or is found in our research for such a position, particularly as to land belonging to the United States.
Further, Mr. Thompson argues that we were clearly wrong when we held there was a “recorded conveyance or dedication.” Mr. Thompson apparently believes that we held that the facts of this ease constituted a dedication recorded in the public records. On the contrary, it was our holding that, under the facts and circumstances of this case, wherein the United States, by virtue of a letter signed by General McArthur agreeing *29 to the construction of the road, created an implied dedication. Professor A.N. Yiannopoulos, in his scholarly work, 2 La. Civil Law Treatise, Highways, Roads, and Streets, § 95, pp. 204-205 states:
The Louisiana Civil Code provides modes by which an owner may transfer to the public the ownership of lands or establish servitudes, but it does not deal with dedication to public use. As a matter of fact, Louisiana has never enacted comprehensive legislation dealing with dedication, and courts have had to struggle over the years to develop an impressive body of jurisprudence governing the requisites for, and the incidents and effects of, dedication to public use.
Under the Civil Code, an owner has always been able to dedicate land to public use in accordance with the provisions governing gratuitous dispositions. However, this faculty has not been frequently used. Since early in the nineteenth century question has arisen whether dedication may be effected in a less formal way; and, in the course of almost two centuries, several forms of dedication have become established.
One mode of dedication is by virtue of a written act, whether in notarial form or under private signature. This mode of dedication is known as “formal dedication”. A second mode of dedication is by virtue of the sale of lots with reference to a plan showing streets, squares, and other public places or by an informal offer to the public to use a road and acceptance by the public by actual use. This is known as “implied” dedication. A third mode of dedication is by compliance with the provisions of R.S. 33:5051, which impose on subdividers of land certain duties, including the filing of plats and the recordation of a formal dedication. This is known as “statutory” dedication. Finally, a fourth mode of dedication is by virtue of R.S. 48:491, that is, the maintenance of roads, streets, and alleys by the public for three years. This is known as “tacit” dedication.
[Emphasis added; footnotes omitted.]
As we have previously pointed out, tacit dedication is available only to local and municipal governments and does not fit the facts of this case. The requirements of a statutory dedication were not met in this case because there was no filing of a plat plan and recordation of a formal dedication. There is no document in notarial form or under private lusignature which conveys a right-of-way or servitude to the state and, thus there is no formal dedication under the facts of this case.
The remaining type of dedication is the implied dedication. It can be accomplished by two modes. The first type of implied dedication occurs when a sale of a lot with reference to a plat plan showing streets, squares and other public places. That certainly does not apply to the facts of this case. However, the second form of implied dedication, an informal offer to the public to use a road, and acceptance by the public by actual use, is applicable to the present case.
As discussed by Yiannopoulos in the aforementioned treatise, in many eases our courts have found implied dedications in urban settings and have liberally construed in favor of the concept of dedication for public use. One of the earliest such cases, City of New Orleans v. Gravier, 11 Mart. (O.S.) 620 (La.1822) indicates that there can be an implied dedication without any written act at all. Again, the concept of public recordation has no applicability herein. Further, Yianoppou-los states the following in 2 Louisiana Civil Law Treatise, Highways, Roads, and Streets, § 98, p. 210:
[A]fter much litigation, it became settled that dedication to public use may be accomplished without any express or written act. This mode of dedication came to be known, in contradistinction with formal dedication, as “implied dedication.”
The essential feature of implied dedication is the absence of requisite formalities. However, there must be, “a plain and positive intention to give and one equally plain to accept.” Thus, the two indispensable elements of implied dedication are: proof of a positive intent to dedicate, frequently qualified as “offer”, and proof of acceptance by the public. The offer may be implied from facts or acts of the owner *30 that exclude any other rational hypothesis except an intent to dedicate and the acceptance may be inferred from actual use of the property by the public.
[Footnotes omitted.]
Based on this reasoning, we found that the consent given by the XJnited States to construct the road on its property and the actual construction and use of that road by the state of Louisiana constituted an implied dedication. Since there was a dedication, the provisions of La.R.S. 48:220.1 do not apply to this case.
In conclusion, we conclude that our original opinion, although vigorously attacked by plaintiffs in their application for rehearing, was correct.
PARRO, J., concurs.
*31 [[Image here]]
*32 [[Image here]]

. See La.R.S. 48:191. In its listing under State Rural Major Collector Routes, La. Highway 628 is described as running “From LaPlace via Montz to La-US 61 near the west levee of Bonnet Carré Spillway.”

. The first six pages of Exhibit 40 are attached as Appendix A. [Editor’s Note: Not Reproducible.]

. The relevant portion of that Exhibit is attached as Appendix B.

. Exhibit 40.

. Herein, we do not delve into predial servitudes as defined by La.C.C. art. 646 or disagreements of neighboring landowners under La.C.C. art. 688. Limited personal servitudes are real rights that confer on a person limited advantages of use or enjoyment over an immovable belonging to another person. Likewise, the State does not own the land under this road; it only has a servitude. See A.N. Yiannopoulos, 3 La. Civil Law Treatise, Personal Servitudes, § 223, p. 448-449 (3d ed. 1989). Because permission by the landowner, the United States, was given to construct a highway for public use, we found in our original opinion that there was an implied dedication. In 2 La. Civil Law Treatise, Property, § 98, pp. 210-211 (3d ed. 1989) Yiannopoulos says:
The essential feature of implied dedication is the absence of requisite formalities. However, there must be, ‘a plain and positive intention to give and one equally plain to accept.' Thus, the two indispensable elements of implied dedication are: proof of a positive intent to dedicate, frequently qualified as 'offer', and proof of acceptance by the public. The offer may be implied from facts or acts of the owner that exclude any other rational hypothesis except an intent to dedicate and the acceptance may be inferred from actual use of the properly by the public. (Footnotes deleted.)
This test squarely fits the facts of this case. Mr. Thompson's complaint that no document was recorded in the public records supports our holding that there was no statutory dedication, which has other requirements.

. Plaintiffs’ expert claimed to have found this limb 16 months after the accident. This leaves on the limb which he found were still green.

. The last page of this Exhibit is attached as Appendix C. In introducing this evidence, in response to the State's argument that the list was irrelevant, Mr. Thompson’s attorney stated:
I am not offering this at this time to prove the truth of the matter asserted therein. So therefor this is an objection to hearsay. These are offered just to show the Highway Department had notice of accidents occurring on this particular control section and what I [sic] going to really point out is that they had notice of run off the road vehicular accidents and that is what I have laid the foundation for and that is what I want to prove notice.
Plaintiffs’ case is not in negligence, so knowledge is only an issue under La.R.S. 9:2800. Knowledge of accidents not related to some road defect are totally irrelevant. A review of the Exhibit fails to show any connection to trees, branches or any other type of road defect. The nature of the road itself, which consists of a wide levee on one side, and no businesses on the other side, as shown on the maps in evidence, lends itself to run-off accidents. We are further aware of a large industrial plant (the Norco refinery) in the area leading to the obvious utilization of this road by employees thereof at all times of the day or night.